### David H. Harts et al. v. Richard Latham et al.

1. CONTRIBUTION—*A Subject of Equity Jurisdiction.*—Contribution is an original subject of equity jurisdiction, and the ground of relief does not stand upon any notion of mutual contract, expressed or implied, between the sureties, to indemnify each other, but arises from principles of equity, independent of contract.

In Equity, for contribution. Trial in the Circuit Court of Logan County; the Hon. JOHN H. MOFFETT, Judge, presiding. Decree for complainants. Appeal by defendants. Heard in this court at the May term, 1899. Affirmed. Opinion filed September 20, 1899.

HARTS & HUMPHREY and KING & MILLER, attorneys for appellants.

JAMES T. HOBLIT and OSCAR ALLEN, attorneys for appellees.

The doctrine of contribution between co-sureties does not rest upon contract, nor upon the question whether the co-surety who is called upon to contribute could be held liable in a direct suit against him, but upon broad principles of equity, that one co-surety shall not be obliged to bear the whole burden. Brandt on Suretyship, 220; Camp v. Bostwick, 20 Ohio St. 337; Jones v. Blanton, 6 Ired. (N. C.) Eq. 115; Story, Equity, Vol. 1, Sec. 493.

MR. PRESIDING JUSTICE WRIGHT delivered the opinion of the court.

This was a bill in equity originally, by Robert D. Latham, who, pending suit, died, and thereafter it was prosecuted by appellees, as executors, to enforce contribution, against appellants as co-sureties upon the official bonds of Wilford D. Wyatt, master in chancery of Logan county, for liabilities upon such bonds, paid by Robert D. Latham in his lifetime. Upon the hearing the court decreed contribution against seven of the appellants separately, each $245.61, and against five separately, each $33.85, from which they separately appeal to this court and seek a reversal thereof for various reasons, chief among which are, that the decree is not supported by the evidence; that the fund concerning which the default occurred was not received officially by the officer; the ten-year statute of limitations had run against claims paid by Latham at the times of such payments, and such payments were voluntary; and that the amounts decreed are excessive.

Wyatt was appointed master in chancery October 15,

1879, succeeding himself four different terms and giving five different bonds—upon all of which Robert D. Latham was a surety—and discharged the duties of the office until in October or November, 1888, when he abandoned it and left the State, his successor, Robert Humphrey, having been appointed February 13, 1889.

In 1886 the Circuit Court of Logan County, in the partition suit of the estate of Dawson Frakes, deceased, decreed the sale of the real estate, and in lieu of the dower of the widow, Sarah Frakes, afterward married to Frederick Wolf, directed that $2,509 of the proceeds of the sale be loaned by the master in chancery on real estate and personal security during the lifetime of Sarah Frakes, and the interest paid to her as dower. This sum of money, being a part of the proceeds of such sale, remained in the hands of the master, and was loaned by him and the interest paid to Mrs. Wolf from time to time, as directed by the decree of the court, until Wyatt succeeded to the office, when the securities for such loan were surrendered to and received by him as such master. June 19, 1891, judgment by default was rendered upon the official bond, against Latham as surety, for $324, the amount of Wyatt's default to Mrs. Wolf for unpaid interest, and a like judgment, September 19, 1892, was recovered for $100, and in May, 1893, another for $84, all of which, with costs and interest, were paid by Robert B. Latham. Another judgment was obtained against Latham January 4, 1894, in favor of the master, for $1,115.67, and later paid by him; a former judgment of $1,575.08 having been obtained against Latham and three other sureties, upon another bond, which was also paid; Latham having at other times paid sums to Mrs. Wolf for which no judgment had been recovered. Wyatt had paid interest to Mrs. Wolf from time to time in different amounts, and was, when he left the State, in default to her about one year, and he at no time made reports to the court of the condition of the investments of this fund. The bond upon which contribution is sought is the one given October 14, 1881, for the term ending October 14, 1883.

In the argument of counsel, by which they seek to reverse the decree, it is first insisted that because Latham permitted judgments against him by default, and neglected or failed to interpose the defense of the statute of limitations, that therefore he paid voluntarily, and can not enforce contribution against his co-sureties.   Contribution is an original subject of equity jurisdiction, and the ground of relief does not stand upon any notion of mutual contract, express or implied, between the sureties to indemnify each other in proportion, but arises from principles of equity, independent of contract (Story, Eq. Jur., Vol. 1, Sec. 493); and originally it seems to have been questioned, whether contribution between sureties, unless founded upon some contract between them, incurring such liability, was a matter capable of being enforced at law (Ibid., Sec. 495).   It therefore follows, in cases like this, the relief administered should be upon broad equitable grounds, rather than by the application of the harsher rules of law, and while equity follows the law, it has never been considered an absolute requirement except in cases where the equities of the particular circumstances demand such a course.   In the case presented it is patent that had the statute of limitations been interposed by Latham in the suits at law, such defense, even then, would have been of no avail to him, for the reason that there had been by Wyatt a fraudulent concealment of the fact that he had converted this fund to his own use.   While it may be that his failure to make report to the court of the condition and investment of this fund would put a cautious person upon inquiry, if such fact was brought to his knowledge, still without actual knowledge it can not well be maintained that the mere failure to make such reports would be constructive notice, and it ought to be beyond dispute that such failure to report, in view of the subsequent developments of his misappropriation of the fund, amounted to a fraudulent concealment on the part of Wyatt, and we feel well warranted in such conclusion.   Under such circumstances we are of the opinion Latham was under no moral or legal obligation to his co-sureties to

interpose such defense, and thereby undergo the vexation and expense of what would seem to an ordinary or well advised person, a fruitless litigation. Hence we are of the opinion there is but little merit in such contention, and if Latham, as surety upon the bond, was legally liable to pay, which we think in equity he had the right under the circumstances to assume, then any payment made by him under such conditions was not a voluntary payment, as argued by counsel, but legally compulsory.

It is next argued that the second bond of Wyatt was not liable for his defalcation, and inasmuch as he succeeded himself for four successive terms, that the last bond must alone stand the burden. This position would doubtless be true, if it was not for the further fact that he appears to have made no report to the court of the condition or investment of this fund during his second term of office, from which fact it is competent to infer that as to such fund he defaulted during that term of office.

Appellants further contend that the bondsmen of Wyatt were never liable for the safekeeping of this fund for the reason it never came to his hands as a fund that under the law he was authorized to receive. The decree of the court directed the master in chancery, not a particular person, to have the custody of, and to loan this fund, and under that decree the predecessor of Wyatt surrendered it to him as master in chancery. We are of the opinion both Wyatt and his sureties are estopped from raising such a question. The decree of the court, even though it was erroneous, was binding upon all persons until it was reversed, especially upon such officers as undertook to execute it as such, and besides all this, the fund being in the hands of the master in chancery as part of the proceeds of the sale in the partition suit, concerning which there can be no question of his authority, he was bound to keep it safely for distribution to such persons as might be entitled to it, and if he made interest out of such fund, he would be bound, like all others in trust relations, to pay interest.

We are of the opinion the evidence warranted the find-

ings of the decree in respect to the amount adjudged against the respective parties to pay as their shares of the contribution due to appellees, and finding no error in the findings and decree of the chancellor who heard the cause, the decree of the Circuit Court will be affirmed.